IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**DON TRIPP**

       Plaintiff**,**

                          No. CIV 01-0177 BB/WWD

v.

**CITY OF SOCORRO, OFFICER BOBBY ARAGON,
CAPTAIN ED BRITT and CHIEF JOHNNIE TRUJILLO**

       Defendants**.**

<u>**MEMORANDUM OPINION**</u>

       THIS MATTER comes before the Court on Defendants' motion for summary judgment (Doc. 39). This Court has reviewed the parties' submissions and the relevant authorities, and finds that the motion is well-taken and will be granted.

       As the parties are aware, summary judgment has already been granted on Plaintiff's excessive-force claim, leaving the malicious-prosecution claim as the only federal cause of action in the case, as well as a state-law claim for malicious prosecution. Consideration of a summary judgment motion entails a finding of whether a genuine issue of material fact exists. If not, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party has the initial burden of showing the absence of a genuine issue. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998). An allegation of a factual dispute that is otherwise unsupported will not defeat a motion for summary judgment that is well presented. *FDIC v. Hulsey*, 22 F.3d 1472, 1481 (10th Cir. 1995). All facts must be viewed in the light most favorable to the party resisting the motion.

A constitutional malicious-prosecution claim takes state law as the starting point, but requires an additional element – a Fourth Amendment deprivation such as an illegal seizure or detention. *See Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). A central element of any constitutional malicious prosecution claim is a lack of probable cause for the initiation of the prosecution. *Id.*, 82 F.3d at 1561-62. Defendants argue that three different findings of probable cause occurred in this case, by the District Attorney who prosecuted the case, the magistrate judge who presided over the preliminary hearing, and the trial judge who refused to dismiss the case following presentation of the State's evidence. These determinations, argue Defendants, invalidate Plaintiff's malicious-prosecution claim.[1]

Plaintiff responds to this argument by pointing out that his malicious-prosecution claim is primarily based on his assertion that Officer Aragon lied or recklessly misrepresented the facts throughout the criminal proceedings held in the state courts. If Plaintiff had submitted any evidence supporting this assertion, summary judgment might not be appropriate on this claim; such deliberate falsehoods or misrepresentations have been held sufficient to state a constitutional claim for malicious prosecution, even if a subsequent finding of probable cause occurs. *See, e.g., Darrah v. City of Oak Park*, 255 F.3d 301, 310-11 (6th Cir. 2001) (if officers knowingly supply false information to entity making probable-cause determination, that entity's determination does not preclude malicious-prosecution claim); *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir.

---

[1]Defendants also rely on alleged findings made by this Court in its prior opinion in this case. That opinion was also a summary-judgment opinion, and therefore simply stated the facts in the light most favorable to Plaintiff, based on the materials that had been submitted to the Court at that time. The "facts" stated in that opinion cannot be considered as established or binding facts in this case. In connection with the current motion for summary judgment, the parties have submitted additional materials for the Court's consideration, and these materials, viewed in the light most favorable to Plaintiff, will control over any statement of facts the Court made in its prior opinion.

2

1996) (chain of causation for malicious-prosecution claim is broken by an indictment, unless there is an allegation of knowing misstatements made by the officers to the prosecutor). As discussed below, however, Plaintiff has supplied no evidence indicating that Officer Aragon lied or recklessly misrepresented facts to any charging authority.

Plaintiff was accused of committing an assault on Officer Aragon with the intent to commit a violent felony, or in the alternative with aggravated assault on Officer Aragon. These charges were based on Officer Aragon's statements and testimony under oath that Plaintiff pointed his gun at Officer Aragon while they were in Plaintiff's yard, causing Officer Aragon to shoot Plaintiff. Officer Aragon in his statements and testimony was always consistent in stating that he believed Plaintiff was pointing a gun at him and was going to shoot him. [Pltf. Exh. 1-2, pp. 11, 43, 62; Exh. 1-3; Exh. 1-4, pp. 45-47, 59] Officer Aragon's statements and testimony were corroborated by the testimony of a firearms expert who testified that the damage to Plaintiff's gun, which was struck by Officer Aragon's bullet, was consistent with the fact that the gun was being held at a 90 degree angle from Plaintiff's body when it was hit, and was struck by a shot coming straight at the barrel of the gun (in other words, by someone shooting directly at the front of the gun rather than from the side). [Def. Reply Exh. Q, pp. 9-10] In addition, Plaintiff's gun was in the cocked position when it was examined after it was knocked out of his hand by Oficer Aragon's bullet. [Pltf. Exh. 1-3] Finally, Plaintiff has never denied that he had the gun in his hand at the time he was shot; he had drawn the gun because he heard a noise when he went into his backyard, and was concerned there was an intruder in his yard. [Pltf. Exh. 1-1, tape transcript, p. 28]

Faced with this evidence, it was incumbent on Plaintiff to produce some evidence that Officer Aragon was lying, not merely mistaken, when he initially stated and then testified that

3

Plaintiff was pointing a gun at him. In an attempt to satisfy that burden, Plaintiff offers only his own deposition testimony that at the time of the shooting, Plaintiff did not know Officer Aragon was on the premises and did not know Officer Aragon had shot him [Pltf. Exh. 1-1, p. 111]. Plaintiff does not explain how his testimony that he did not know Officer Aragon was on the premises, and did not know who had shot him, raises an issue of fact about whether he was pointing his gun at the officer. Presumably, Plaintiff is implying one of two things: (1) since he did not see Officer Aragon before the shooting, he could not have been intentionally pointing his gun at the officer, knowing he was an officer; or (2) he could not have been facing the officer before he was shot, or he would have seen and recognized him. The Court will address each possibility.

Whether or not Plaintiff was intentionally pointing his weapon at Officer Aragon is not a relevant consideration to the malicious-prosecution claim; what matters is whether Officer Aragon actually believed the weapon was pointed at him. No case has held that an officer's merely mistaken belief that a crime has been committed could be the basis of a malicious prosecution claim. What is necessary is that the officer deliberately misrepresented the facts to the charging authority or in his testimony. *See, e.g., Darrah; Reed.* Therefore, it is not sufficient for Plaintiff to raise an issue of fact as to whether he was intentionally pointing his gun at Officer Aragon, or knew the gun was pointed at Officer Aragon. Instead, there must be some evidence indicating that Officer Aragon did not actually believe the gun was pointed at him, but was intentionally misrepresenting that fact. The only evidence in this case, however, supports Officer Aragon's belief that the gun was pointed at him (intentionally or otherwise). As noted above, Officer Aragon testified to that effect. Moreover, the ballistics evidence shows Plaintiff's gun was drawn and cocked, and was hit by a shot fired from directly in front of the gun. The mere fact that

4

Plaintiff did not see Officer Aragon does not raise an issue of fact as to whether his gun was pointed toward Officer Aragon or not.

The other possible implication Plaintiff may be arguing for is an inference that since he did not see Officer Aragon before he was shot, he might not have been facing Officer Aragon (and thereby pointing his weapon at the officer). However, since it is undisputed that it was dark in the backyard, that Plaintiff had just recently entered the yard from his house, and that Officer Aragon "lit up" Plaintiff with his flashlight just before the shooting, the fact that Plaintiff did not see Officer Aragon does not give rise to an inference that he was not facing Officer Aragon when he was shot. In other words, the conditions were not such that a factfinder could infer that Plaintiff would certainly have seen Officer Aragon if he had been facing him. This means there is no evidence contradicting Officer Aragon's statements and testimony that Plaintiff was facing him and walking toward him, and that Plaintiff's gun was pointed at him.[2] In sum, there is certainly an issue of fact as to whether Plaintiff did see Officer Aragon and did intentionally point his gun at Officer Aragon, or whether he was simply walking through his yard toward the sound he had heard, without knowing there was a person in front of him. There is no issue of fact, however, as to whether Plaintiff was facing Officer Aragon, whether Officer Aragon believed the gun was pointed at him, and whether the officer believed Plaintiff was about to fire his weapon.

Plaintiff also argues that it is "undisputed" that the reason he was prosecuted was that if he was not, the City of Socorro "might as well write me a check." In other words, he contends the failure to prosecute him would have been an acknowledgment that he was wrongfully shot by

---

[2] It must be emphasized again that Officer Aragon's statements are corroborated by the admitted fact that Plaintiff had drawn his gun and cocked it, because he thought an intruder might be in his yard, and by the expert's testimony that the damage to Plaintiff's gun was consistent with damage that would occur if the gun was pointed straight out away from Plaintiff's body and was hit head-on by a bullet.

5

Officer Aragon, and he was therefore prosecuted criminally in an attempt to avoid civil liability for the shooting. Accepting for purposes of argument Plaintiff's contention that such a prosecution would constitute a constitutional violation, the Court nevertheless finds Plaintiff has not adduced sufficient evidence to raise a genuine issue of fact as to whether his allegations concerning the City's motives are true. Plaintiff's evidence in favor of his claim is as follows: approximately six months after the shooting, Defendant Britt came by Plaintiff's house; while they were speaking, Plaintiff said something to the effect that "you guys have to prosecute me or you might as well write me a check," and Defendant Britt "acknowledged that that was probably true, or nodded his head yes, or something to that effect." [Pltf. Exh. 1-1, p. 120]

If there was any evidence that Defendant Britt initiated or continued the prosecution, or had any influence on the decision to initiate or continue the prosecution, Plaintiff's testimony might raise an issue of fact as to the motives for that prosecution. However, Defendants presented evidence showing that the criminal complaint initiating the prosecution was signed by Art Ortiz, an agent of the New Mexico State Police; that the complaint was approved by Barbara Romo, Chief Deputy District Attorney; that Ms. Romo consulted with Ron Lopez, the District Attorney, before deciding to proceed with the charges; that an assistant district attorney named Dustin O'Brien was also a party to the discussion; and that the decision to file the charges was based on the facts provided by Mr. Ortiz following his investigation. [MSJ Exh. J, Crim. Compl.; Exh. L, Lopez depo. pp. 141-43] Plaintiff has pointed to no evidence indicating that Defendant Britt was a party to any discussions concerning the decision to proceed with the case, was ever asked his opinion about the strength of the case, or had any discussions whatsoever with Ms. Romo, Mr. Lopez, Mr. O'Brien, or Mr. Ortiz about whether or why the case should proceed. Therefore, there is no evidence that Defendant Britt had any role in the decisions about initiating

6

or continuing the prosecution, or was privy to any information concerning the motives of the prosecutors. Accepting as true, then, that Defendant Britt agreed the prosecution had to be pursued or the City would be exposed to civil liability, that agreement is irrelevant to the question of whether the individuals who actually made the decision to proceed with the prosecution were motivated by a desire to protect the City from liability. Absent any evidence that the decisionmakers in this case had such a motive, the Court must find Plaintiff has failed to raise an issue of fact concerning the motives behind the prosecution. *Cf. Jones v. Barnhart*, 349 F.3d 1260, 1269 (10th Cir. 2003) (no evidence presented showing that individual making promotion decision knew of plaintiff's outspokenness; therefore, plaintiff failed to establish prima facie case of causation for her claim that she was refused promotion due to that outspokenness); *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (age-related comments by non-decisionmakers are not material in showing the employer's action was based on age discrimination).

**Conclusion**

Plaintiff has failed to introduce any evidence tending to show that Officer Aragon did not have a reasonable belief that Plaintiff's gun was pointed at him and he was about to be shot. In addition, Plaintiff has failed to introduce any evidence tending to show that the criminal prosecution against him was pursued for the purpose of avoiding civil liability for the shooting. Therefore, summary judgment will be granted on Plaintiff's remaining federal and state-law claims, and this case will be dismissed.[3]

---

[3] Plaintiff did not argue that the state-law malicious prosecution claim should be analyzed any differently than the federal claim, and the Court therefore will not engage in a separate analysis of that claim. If such a separate analysis were performed, the Court does not believe the result would be any different for the state-law claim.

Dated this 1st day of March, 2004.

                                          BRUCE D. BLACK
                                          United States District Judge

**Attorneys:**
For Plaintiff
James C. Ellis
Joan M. Waters

For Defendants
Virginia Anderman